**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GERRY E. HERRIN,**

          **Plaintiff,**

**v.**                                            **Case No.  8:04-cv-2231-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

          **Defendant.**

_____/

**O R D E R**

      The Plaintiff seeks judicial review of the denial of her claim for Social Security

disability benefits and Supplemental Security Income payments.  For the reasons set out

herein, the decision is affirmed.

**I.**

      Plaintiff was fifty-five years of age at the time of her administrative hearing.  She

stands 4', 10" tall and weighed 117 pounds.  Plaintiff has a tenth grade education and was in

special education classes.  Her past relevant work was as a babysitter, cashier, waitress, and

counter helper.  Plaintiff applied for disability benefits and Supplemental Security Income

payments in March 2002,[1] alleging disability as of July 28, 2000, by reason of hypertension,

_____

[1]Plaintiff filed previous applications on January 27, 1999.  These applications were
denied by the ALJ on July 27, 2000, upheld by the Appeals Council, and affirmed by this
court on August 27, 2002.  See (R. 30-36, 65-78).  Significant to the instant cause is
Plaintiff's date last insured for disability insurance benefits, June 30, 2002.

anxiety, degenerative disc disease in the fifth and sixth vertebrae, osteoarthritis in the lumbar region, stiffness in the neck and back, numbness in the right leg, and dust and pollen allergies. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  In essence, Plaintiff claimed that she could no longer work at any job because of her high blood pressure and anxiety.  In particular, Plaintiff testified that the anxiety manifests itself in an inability to deal with people around her.  For example, Plaintiff thinks people are angry with her or talking about her, she sees things crawling out of the corner of her eye when nothing is there, she hears voices, and she gets nervous when she around a lot of people.  She says that this occurs just about every day and she stays home in order to avoid confrontations with people.  Plaintiff stated that, during these anxiety attacks, she shakes, stutter, cries, and has trouble speaking.  Her anxiety also affects her memory and she must write everything down to remember.  As to the physical manifestations of the anxiety, Plaintiff testified that it causes increased blood pressure, chest pains, and nausea about three to four times a week.  At times, she is unable to walk because she is shaking too badly or because she does not have any energy.  According to Plaintiff, her blood pressure will rise to about 160/90 in the afternoon almost every day, and her pulse rate will rise to the 80s.  During these instances, she takes Clonidine and sits for an hour; if that does not help, she will take a Lorazepam.  If that still does not help, she will call a nurse or doctor.  These spikes in blood pressure can occur even when Plaintiff is not stressed.  Some medications, such as Methyldopa can lower her blood pressure, but when it goes below 100, she becomes sleepy and has trouble staying awake.  Plaintiff also reported that she has had other adverse reactions to many medications.  While Plaintiff indicated that she is supposed to check her

2

blood pressure three times a day, she checks it twice before she goes to bed and whenever she does not feel right.  Plaintiff also testified to heart problems, for which she takes aspirin; she has also undergone a stent placement.  She also complained of daily headaches which last for about fifteen to twenty minutes or until Tylenol takes effect.  When they occur, she must sit down because it bothers her eyes.

Plaintiff has seen several doctors, including psychiatrists and a counselor, for her various problems.  She indicated that her psychological problems may be caused by her elevated blood pressure or they may be hereditary.  Plaintiff testified that she suffers recurrent nightmares in which she is searching for something.  She cannot remember the frightening ones, which cause her to suffer anxiety attacks.  For minor attacks, she gets up and takes half a Lorazepam to calm the anxiety.  Plaintiff stated that she has trouble sleeping and sometimes stays awake all night.  She jumps at noises because she thinks someone or something is outside and is after her.  Plaintiff has a tendency to relive bad experiences, such as those with her mother and her third husband.

Plaintiff also complains of bilateral pain in her shoulders from the neck down to her shoulder blades.  She described her pain at a level six or seven when sitting in front of a keyboard, and, if she walks about a block, she has stiffness in the legs and pain in the lower lumbar region at a level five or six.  She also described pain at a level seven or eight when driving or sitting for a long time, along with trouble getting up because of numbness and pain in her leg.  By her account, there have been occasions when she has fallen after getting up and taking two or three steps.  Plaintiff complains further of pain in her hands at a level four or five, and she indicated that she is unable to write and will drop things.

Plaintiff lives in a mobile home with a gentleman friend who has some income from SSI and helps to take care of her. She is able to go shopping, but needs assistance from her friend with walking and with her anxiety and forgetfulness. She has difficulty performing and completing household chores such as vacuuming or laundry because of pain in her back and legs. She also forgets to finish some chores such as vacuuming, the laundry, dusting, changing sheets on the bed, eating, or even making herself something to eat. Plaintiff has difficulty keeping up with due dates, but her friend handles the monthly bills and appointments. She can remember some but not all of the contents of a television show she has just viewed. Plaintiff sees a primary physician, a psychologist, a cardiologist and blood pressure specialist, a neurologist, and a vocational rehabilitation physician. See Plaintiff's testimony (R. 423-45).

The ALJ also took testimony from Gerald Wili, a vocational expert (hereinafter "VE"), who testified upon an assumption of an individual of Plaintiff's age, education, and past work experience; with the capacity to lift no more than twenty-five to thirty pounds on a regular or constant basis and to sit, stand, and walk for up to two hours at a time in an eight-hour day. Upon this assumption, the VE opined that Plaintiff could perform her past work as a cashier-checker, waitress, and fast food worker. With the additional restriction of performing only simple, repetitive mental tasks in a low-stress environment, the VE opined that Plaintiff could still perform her past work as cashier-checker as the job is customarily performed because, although it would require her to deal with people, it does not involve confrontation. Upon an assumption that such person was limited to a wide range of light exertional work but limited to simple, repetitive tasks in a low-stress environment, the VE indicated that Plaintiff could still perform the cashier-checker job. However, if the person

4

could not sustain the performance of even simple, repetitive tasks or could not sustain work activity over a typical eight-hour workday or forty-hour workweek, the VE testified that no jobs would be available to Plaintiff.  On questioning by Plaintiff's counsel, which referenced the mental residual functional capacity assessments by two non-examining psychologists from 2002 (R. 286-93), the VE opined that if Plaintiff was so functionally limited for up to half of the time or even up to one-third of the time, she would be precluded from all work.  Upon further questioning by counsel, the VE acknowledged that there are certain stresses involved with the cashier-checker job, including handling money, responding to lines of people, communicating with customers, and receiving customer complaints.  Nonetheless, the VE described the cashier-checker position as a low stress position that Plaintiff could perform. (R. 445-56).  Finally, upon further questioning by the ALJ, the VE testified that, in addition to her past work as a cashier-checker, Plaintiff could also perform work as a hotel/motel maid, a sales attendant, mail clerk, or cafeteria attendant, even though she has no transferable skills from her past, unskilled jobs.  See VE's testimony (R. 445-56).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of April 23, 2004, the ALJ determined that while Plaintiff has severe impairments related to chronic hypertension, diffuse degenerative joint disease, coronary artery disease, and major depression with anxiety and panic attacks, she nonetheless had the residual functional capacity to perform a wide range of light work.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as a cashier-clerk.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 14-

22).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred, in failing to fully and adequately evaluate the vocational testimony;

(2) The Commissioner erred in failing to find the Claimant's psychological impairments severe at all times at issue; and

7

(3) The Commissioner erred in failing to fully credit the testimony of the Plaintiff, without sufficient cause.

Plaintiff initially asserts that there were unexplained inconsistencies between information in the Dictionary of Occupational Titles (hereinafter "DOT") concerning the job of cashier-checker and the VE's testimony and that they should have been explained.  In particular, she argues that, pursuant to the DOT, the job of cashier-checker requires aptitudes related to general learning ability, clerical perception, and numbers in the middle third of the population and a temperament for dealing with people and attaining precise set limits, tolerances, and standards.  See U.S. Dep't of Labor, DOT § 211.462-014.  By her argument, these requirements appear to be in conflict with the profile of her developed at the hearing and in the evidence.  Relying on Social Security Ruling (hereinafter "SSR") 00-4p, Plaintiff first argues that the ALJ erred in failing to ascertain whether the VE's testimony was consistent with the DOT.  By the Plaintiff's argument, the failure to address the inconsistencies between the VE's testimony and the DOT requires a remand.

Separately, Plaintiff argues that the ALJ failed to give adequate credit to the testimony of the VE as it related to findings of non-examining psychologists who indicated that she suffered a number of vocationally relevant limitations by reason of her mental condition.  See (R. 286-93).  When such limitations, as interpreted by counsel, were employed with the VE, the witness responded that a person suffering such vocationally relevant difficulties from one third to one half of the time would not be able to sustain employment.  Despite this testimony, the ALJ concluded neither these reports nor the VE's related testimony merited a finding of disability.  Plaintiff urges that by reason of these mental

8

capacity assessments and the VE's testimony, she is disabled and a remand for an award of benefits is required.

Initially, Plaintiff does not demonstrate that the VE's testimony was in actual conflict with the DOT and I cannot conclude otherwise.[2]  By my reading, the VE's testimony reflected a considered opinion that Plaintiff could still do her former work as a cashier-checker despite her physical restrictions and a limitation for simple, repetitive mental tasks in a low-stress environment.  Because the testimony is not in conflict with the DOT, the ALJ was not obliged to make this inquiry.  See Rutherford v. Barnhart, 399 F.3d 546, 556-57 (3d Cir. 2005).[3]

As for the second aspect of this claim, in response to Plaintiff's counsel's questioning, the VE testified that *if* Plaintiff was unable to understand, remember, or carry out detailed instructions, maintain attention and concentration, perform activities within a schedule, maintain regular attendance and punctuality or complete a normal workweek, *up to fifty percent of the time*, then she would be unable to perform any of the jobs he had identified.  (R. 449).  Even if such limitations occurred only *one-third of the time*, the person

---

[2]Here, it is worth noting that Plaintiff had experienced counsel representing her at the hearing and thus is not blameless for any alleged deficiency in the record.  As the transcript reflects, while counsel questioned the VE, he chose not to inquire in this area.

[3]In the Eleventh Circuit, an ALJ is free to rely upon the VE's testimony even if it is inconsistent with the DOT; that is to say, contrary to this SSR, the testimony of a VE trumps the DOT.  See Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999).  The rationale for this approach is derived from a reading of both the DOT and the regulations, which advise that the DOT is not the exclusive source of information concerning jobs.  As this decision reflects, the court rejected an approach adopted by the Tenth Circuit in an analogous case involving a claim similar to Plaintiff's claim here.  See id. at 1229.  It is also worth noting that Plaintiff had worked this type job for years (R. 99), and there is simply no evidence she lacked the aptitude or temperament for this type work.

would be let go.  (R. 450).  Plaintiff maintains that the manner in which counsel quantified

her limitations was appropriate and given the VE's testimony, she is disabled.  I disagree.  I

find the ALJ's handling of this testimony appropriate and his conclusions supported by

substantial evidence.

As the decision reflects, the ALJ fairly assessed the entire mental health record and

squarely confronted this issue in reaching his conclusions.  By the ALJ's analysis, the

hypothetical by counsel was not record based, and thus he rejected this portion of the VE's

testimony.  (R. 20).  Further, the definition of moderate and marked as used by the VE under

Plaintiff's questioning was substantially different from how the terms were contemplated by

the doctors.  Id.  This conclusion was based on the reports themselves, which reflected a far

different assessment of Plaintiff's mental ability to work at some type job.  As the ALJ stated,

> In each case, both reviewing mental specialists opined that given the
> respective limitations found by them, the claimant would still be capable of
> performing simple repetitive tasks.  It was further indicated by one reviewer
> that the claimant was mentally capable of working a regular schedule while
> the second reviewer indicated that the claimant was capable of performing
> such tasks on a full day and week basis.  Therefore, I reject the hypothetical
> questions posed by the claimant's attorney as not supported by the evidence
> of record.

(R. 20).  After considering these assessments, I find that this conclusion is correct.  The actual

mental functional capacity assessment by each of these reviewing doctors clearly indicates

that they were not quantifying the limitations they assessed in the same manner as counsel did

at the hearing, and neither expressed the belief that Plaintiff was disabled form all work.[4]

---

[4]As the Commissioner notes, the form employed by these reviewing doctors contains
the doctors' conclusions on the claimant's functional capacity assessment in section III.  See
(R. 288, 292).  Section I of the form, containing the matters relied upon by the Plaintiff, is
intended as a summary of the reviewers conclusions.

By her second claim, Plaintiff argues that she suffered severe psychological impairments even before the date identified by the ALJ and that a remand is necessary to determine a better onset date.  In particular, Plaintiff argues that the ALJ erred in concluding that there was no evidence of a severe mental impairment prior to April 24, 2002, and that the ALJ should have either employed a medical advisor to determine the appropriate onset date for her severe mental impairment or attempted to recontact her treating psychiatrist for clarification on this point.[5]  I disagree.

As the decision reflects, the ALJ determined that, prior to April 24, 2002, the date on which a consultative examiner reported diagnoses of major depression and post traumatic stress disorder, the clinical evidence of record revealed little evidence of a mental impairment.  (R. 18).  This conclusion is supported by substantial evidence.  As the ALJ noted, the treatment notes of Dr. Prudencio Aqui, which referenced depression, did not reveal a severe condition.  See (R. 181-91).  The records from Lakeland Regional Medical Center in June 2001, which referenced a history of anxiety, also fail to reveal a severe mental condition.[6] (R. 192-205).  Indeed, as the ALJ noted, a severe condition was not identified prior to the consultative examination in April 2002.  In my view, given the record presented, the ALJ could properly conclude that Plaintiff's mental state worsened over time and ripened into a

---

[5]The import of all this is unclear.  Here, the ALJ determined that Plaintiff suffered a severe mental impairment at step two of the evaluation process, and while the condition resulted in functional impairments as addressed above, it did not render her disabled from all work.  Thus, any error in deciding the onset date of a severe mental impairment would appear harmless and a remand would serve no useful purpose.  At least one court has held that no inquiry into the onset date is even necessary in these circumstances.  See Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997).

[6]Similar references in notes from Jay Care Medical Center, for treatment between March 2001 and January 2002, did not reveal a severe condition.  (R. 206-31).

11

severe condition as of the April 24, 2002, assessment.  Further, the ALJ could properly reach this conclusion without the testimony of a medical advisor or further contact with Plaintiff's doctors.[7]

By her third claim, Plaintiff generally urges that the ALJ erred in failing to fully credit her subjective complaints.  She argues that the decision does not reflect that such testimony was evaluated in accordance with the Eleventh Circuit's "pain standard," and she urges that the reasons stated by the ALJ for discounting her credibility were not adequate.  As a remedy, she urges that court must accept Plaintiff's subjective testimony as true and either remand for an award of benefits or remand for further development of the record.

Plaintiff is correct that in this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.[8]  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons

---

[7]Insofar as Plaintiff couches this argument in terms of a failure to develop the record, while she is undoubtedly correct that the ALJ has a duty to fully and fairly develop the record, she overlooks that it is she bears the burden of proving that she is disabled.  See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  Counsel who represented her at the hearing made no request that additional evidence be taken and did not complain that the record was not sufficient for a full and fair consideration.  Furthermore, it is not demonstrated here.

[8]By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  Holt, 921 F.2d at 1223 (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  Id. (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).

12

for his decision.  Id. at 1561-62.  The failure of the ALJ to articulate the reasons for

discrediting subjective testimony requires, as a matter of law, that the testimony be accepted

as true.  Id. at 1562 (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988));

MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).  Further, the lack of a

sufficiently explicit credibility finding may give grounds for a remand if the credibility is

critical to the outcome of the case.  Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir.

1982).  Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the

testimony or the implication must be so clear as to amount to a specific credibility finding.

Foote, 67 F.3d at 1562.

Here, the decision reflects that, after a thorough review of the medical record and

Plaintiff's subjective complaints, the ALJ concluded Plaintiff was not entirely credible

because none of her treating or examining physicians had indicated she was as limited as she

claimed and the clinical evidence did not support her claims.  (R.21).  Further, those

physicians commenting on the matter all opined that Plaintiff was capable of full-time work

despite her limitations.  Id.

Initially, insofar as the Plaintiff complains that her subjective complaints were not

evaluated "through the prism" of the "pain standard," I find otherwise.  Although the standard

is not expressly mentioned in the decision, the decision reflects that the ALJ considered

Plaintiff's subjective complaints in light of the regulations at 20 C.F.R. §§ 404.1529, 416.929

and Social Security Ruling 96-7p.  See (R. 21).  Further, in addressing Plaintiff's residual

functional capacity, the ALJ noted his duty to consider the intensity, persistence, and

functionally limiting effects of symptoms when the medically determinable mental or

physical impairments could reasonably be expected to produce the symptoms claimed.  (R.

16).  The decision clearly reveals that the ALJ credited Plaintiff with mental and physical impairments which reasonably could give rise to her subjective complaints but not to the extent claimed.  In these circumstances, it is evident that the ALJ complied with the applicable standard.  See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).

I also conclude that the ALJ adequately discounted Plaintiff's subjective complaints as not entirely credible.  In this case, there was a lack of objective or clinical findings to support the degree of limitations claimed by the Plaintiff and no physician opined that Plaintiff could not work.  On the contrary, at least one treating doctor did not believe she even suffered from the disease for which he treated her.[9]  In an interesting twist, Plaintiff now suggests that this testimony, rather than reflecting on her credibility, indicates that she suffers from a somatoform disorder and, at a minimum, further development of the record is necessary.  However, as the record and the decision reflect, Plaintiff was seen by several mental health providers.  None of them diagnosed a somatoform disorder.  At the administrative hearing, counsel made no claim Plaintiff suffered such condition; nor did he request a further development of the record on this issue.  As noted above, Plaintiff carries the burden to prove her disability.  She has failed to do so in this regard and there is no basis to conclude that a remand would serve any useful purpose.  In conclusion, I find the ALJ properly evaluated the subjective evidence and offered adequate reasons to conclude that Plaintiff was not fully credible.

_____

[9]Dr. German Ramirez, a treating nephrologist, advised another physician that he had reached his limit of tolerance with Plaintiff and that he did not believe her disease was real. He suggested she needed a psychiatrist rather than a nephrologist.  (R. 323).

14

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 17th day of March 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record